CASE 69—SETTLEMENT OF DECEDENT'S ESTATE—FEB. 4.

# Clift v. Williams, Etc.
# Glover & Durrett v. Williams' Administrator.

APPEAL FROM FLEMING CIRCUIT COURT.

1. LIMITATION—MORTGAGES.—A mortgage to secure the payment óf a promissory note is a mere incident to the debt, and as long as the note remains a legal liability the statute of limitations can not be invoked as a bar to the lien by (1) creditors, (2) purchasers, or (3) the maker's personal representative.

2. INNOCENT PURCHASER OF PART OF MORTGAGED LAND.—A purchaser for value of part of the land covered by mortgage is entitled to compel the mortgagee to exhaust his lien upon the unsold portion before giving up the portion acquired by him.

3. UNRECORDED MORTGAGES.—An unrecorded mortgage is valid against antecedent creditors of the mortgagor.

JOHN P. McCARTNEY FOR THE APPELLANT CLIFT.

1. The mortgage is a mere incident to the debt and can not be barred by limitation until the debt is. Kendall v. Clark, 90 Ky., 178; Tate v. Hawkins, 81 Ky., 577; English v. Wathen, 9 Bush, 388; Hopkins v. Stout, 6 Bush, 379; Fields v. Fields, 16 Ky. Law Rep., 534.

E. L. WORTHINGTON, ALSO FOR THE APPELLANT CLIFT. (JOHN P. McCARTNEY OF COUNSEL).

1. The purchaser, W. Y. Williams, having bought his land prior to the maturity of Clift's note, the decisions in the case of Tate

v. Hawkins, and Kendall v. Clark, cited by Williams' counsel, are not applicable. Heyer v. Heyer, 7 Paige's Chan., 465; 34 Am. Dec., 355.

2. The appellant's lien on the tract of land not purchased by Williams was certainly not barred by limitation. House v. Daniels, 9 Wheat., 489; Ewell v. Daggs, 108 U. S., 143. The creditors of John W. Williams can not attack the validity of the mortgage; they are not *bona fide* purchasers of anything, and as against them, the mortgage would have been good even without being recorded. Morton v. Robards, &c., 4 Dana, 258; Righter v. Forrester, &c., 1 Bush, 278; Baldwin v. Crow, 86 Ky., 679; Low, &c., v. Blinco, 10 Bush, 335; Swigert v. the Bank of Kentucky, 17 B. M., 290; 1st. Story's Equity, sec. 410, note 1; Tate v. Hawkins, *supra*. Moreover, a mere general creditor can not plead the statute of limitations against another creditor at all. Wood on Lim., sec. 41; 2 Jones on Mortgages, sec. 1214.

3. If the mortgage lien is not valid against the widow's claim for dower, then it results logically that it was not legal against the heirs at law. Hobson v. Hobson, 8 Bush, 665; Tipton v. Traders' Deposit Bank, 17 Ky. Law Rep., 960; Lane v. Traders' Deposit Bank, 14 Ky. Law Rep., 873.

JOSEPH H. POWER FOR THE APPELLANTS, GLOVER & DURRETT.

1. The writing executed by John W. Williams to the appellants, Glover & Durrett, constituted a mortgage which was good between the parties and against antecedent creditors. Jones on Mortgages, secs. 82, 83; Dickson's Admr. v. Luman, 13 Ky. Law Rep., 734; Pom. Eq. Jur., vol. 3, secs. 1233, 1235, 1237; Marshall v. Lewis, 4 Litt., 140; Bank of Ky. v. Vance, Ibid, 168; *In re* Howe, 1 Paige, side page, 125; Hauselt v. Harrison, 105 U. S., 1075; Gregory v. Morris, 96 U. S., 740; Hultzer Bros. v. Phillips, 4 Am. St. Rep., 306; Three Forks Lumber Co. v. Smith, 17 Ky. Law Rep., 566; Wood v. Holly Mfg. Co., 46 Am. St. Rep., 56; Barney &. Smith Mfg Co. v. Hart, 8 Ky. Law Rep., 223; Morford v. Browning, 2 Ky. Law Rep., 440; Low & Whitney v. Blinco, 10 Bush, 331; Baldwin v. Crow, 86 Ky., 679.

E. P. HUMPHREY, ALSO FOR THE APPELLANTS, GLOVER & DURRETT.

1. The instrument in question has all the requisites of a legal mortgage with the exception of acknowledgment and re-

cording. There is no question as to the competency of the parties to the instrument, and the allegation is made that the mortgagor signed and delivered it to the mortgagees. The language used indicated clearly the creation of a lien. The property was certainly capable of being made the subject of a mortgage. The consideration, or sum to be secured, was definitely expressed, and the mortgaged property was sufficiently described to be susceptible of identification.

2. Neither acknowledgment or recording is necessary to create an equitable lien.

3. The filing of appellants' pleadings, setting up their claim, was sufficient notice of their lien to the other creditors.

4. The allegations of the appellants' answer and cross-petition, which for the purposes of the demurrer have to be taken as true, set up a valid equitable lien, good as between the parties to the instrument, and effectual also against third parties who are affected with notice of it.

5. Therefore, the court below erred in sustaining the demurrer to the appellants' answer and cross-petition as amended.

Citations: De Leon v. Higuera, 13 Cal., 496; Burnside v. Terry, 45 Ga., 648; Hoe & Co. v. Bullock, 1 Ky. Law Rep., 313; Harris v. Jones, 83 N. C., 321; Frazer v. Taliaferro, 6 Ky. Law Rep., 744; Starling v. Blair, 4 Bibb, 288; Boulware's Admr. v. Pendleton, 6 Ky. Law Rep., 727; Am. & Eng. Ency. of Law (2d. ed.), vol. 5, p. 977; Connor v. Elliott & Richards, 10 Ky. Law Rep., 229; Dickson's Admr. v. Luman, &c., 13 Ky. Law Rep., 734; Snoddy v. Boles, 7 Ky. Law Rep., 225; Baldwin v. Crow, 86 Ky., 685; Low & Whitney v. Blinco, 10 Bush, 335.

JOSEPH H. POWER FOR THE APPELLEE, LUCY B. WILLIAMS, IN CLIFT, TRUSTEE, V. WILLIAMS.

1. The appellee, Lucy Williams, widow of John W. Williams, is not in privity with him either in estate or in blood and can not be bound by the payments made by him. The case of Gallagher v. Wayland, 10 Ky. Law Rep., 458, is a strong analogy of this proposition. This point is also sustained by VanKeuren v. Parmeilee, 51 Am. Dec., 332; Shoemaker v. Benedict, 72 Am. Dec., 95; Coleman v. Forbes, 22 Penn. St., 156; Bell v. Morrison, 1 Pet., 351; Thompson v. Peter, 12 Wheat., 565; Tompkins v. Gardner, 1 Denio, 247; Miller v. Miller, 48 Am. Rep., 738;

[ 36 ]

Kerr on Real Property, vol. 3, 1946; Power v. Nesbitt, 127 Ind., 497; Kelley v. Canary, 129 Ind., 460.

JOSEPH H. POWER FOR LUCY B. WILLIAMS IN A PETITION FOR A RE-HEARING.

EDWARD W. HINES, FOR APPELLEE, LUCY B. WILLIAMS, IN A SUP-PLEMENTAL PETITION FOR A REHEARING.

1. The opinion herein seems to be in conflict with the cases of Tate
v. Hawkins, 81 Ky., 577; and Kendall v. Clark, 90 Ky., 178.
The wife's claim to dower is especially favored in law. Wil-
liams v. Williams, 89 Ky., 381. In Dunn v. Buckley, &c., 56 Wis.,
190, the Supreme Court of Wisconsin recognizes the doctrine
that the period of limitation can not be extended by payments
made by the husband so as to affect the wife's claim to home-
stead where she is indebted with the husband in a mortgage
on the homestead to secure the debt.

2. While the wife is not a surety of the husband within the seven
years statute of limitations, she may be entitled to the rights
of a surety in other respects. Miller's Admr. v. Jolly, 5 Ky.
Law Rep., 324; Dickson's Admr. v. Luman, 93 Ky., 614; Low v.
Allen, 26 Cal., 141.

E. L. WORTHINGTON, IN RESPONSE TO THE PETITIONS FOR A REHEAR-ING.

Additional citations: Ky. Stats., secs. 2132, 2135; Schweitzer
v. Wagner, 94 Ky., 458; Melone v. Armstrong, 79 Ky., 248;
Ratcliffe v. James, 81 Ky., 443; 2 Jones on Mortgages, secs.
1202, note; Leonard v. Brinford, 122 Ind., 200; Tiedeman on
Real Property, secs. 115, 126; Hawley v. Bradford, 37 Am. Dec.,
390.

JUDGE WHITE DELIVERED THE OPINION OF THE COURT.

These two appeals are upon the same transcript, and are
heard together. The administrator of J. W. Williams
brought an action to settle the estate of his decedent, and
both appellants, being creditors of J. W. Williams, were
made parties defendant.

Appellant B. F. Clift, trustee of Stanton Clift,
in his answer and cross petition, alleges that in
March, 1878, the decedent J. W. Williams, executed a
note to W. S. Botts for the sum of $2,500, due twelve

months after date.  To secure this note, Williams and his wife, appellee Lucy Williams, executed a mortgage on a tract of land in Fleming county, and on which Williams then lived.  This note to Botts was sold and assigned to John Clarke, and, by the will of John Clarke, devised to appellant Stanton Clift.  Payments were made on this note, from time to time, from March, 1879, the last being October 19, 1895.  The note, properly proven, and the mortgage, were filed with the cross petition, and judgment was sought enforcing the mortgage lien.  To this answer and cross petition of Clift certain creditors of decedent filed answer, and pleaded the statute of limitation of 15 years to the mortgage therein set out.  They alleged that before they gave credit to decedent, J. W. Williams, they caused the records of the county clerk's office of Fleming county to be examined for a period of 15 years next before the investigation, and that, finding within said date no mortgage lien of record they extended credit to decedent, J. W. Williams, upon the belief, from their investigation, that there was no lien, and these creditors deny that appellant Clift has a lien on the land.

W. Y. Williams, a son of decedent, and the administrator, filed answer to the answer and cross petition of appellant Clift.  Williams alleges that in January, 1888, he purchased, by deed of general warranty from decedent, J. W. Williams and his wife, appellee Lucy Williams, a portion of the land described in the mortgage to Botts, this portion containing 87.1 acres, at the price of $4,350, of which sum $2,500 was paid cash, and that the deferred payments had long since been paid to decedent in his lifetime; and in 1890 purchased of Maginnis, who had purchased of Sousely, who had purchased of Williams, who had purchased of decedent, about five acres of this land, and had paid

for same in full. Williams pleaded the statute of 15 years as a bar to Clift's lien; also that Clift, well knowing of his purchase of this portion, indulged decedent for many years without enforcing his lien, and without collecting the full amount of the interest, and pleaded this laches in bar of appellants' lien.

Appellee Lucy Williams, the widow of decedent, J. W. Williams, also filed answer to the cross petition of appellant Clift; and alleges that, by the mortgage to Botts, she only waived and relinquished her potential right of dower in the land, and that more than fifteen years had elapsed since its execution, and that she was and is ignorant of any payments on the note, and that, as to her rights of dower, the mortgage lien is barred by limitation.

To all of these answers to the cross petition of Clift demurrers were filed and overruled by the court, and, appellant Clift declining to plead further, the court adjudged he had no lien on the land by reason of limitation, but allowed his note as a general claim against the decedent, J. W. Williams. From that part of the judgment that adjudged that appellant had no lien this appeal is prosecuted by him.

This court in the case of Prewitt v. Wortham, 79 Ky., 287, said: "The rule in this State in reference to mortgages, whether on personal or real estate, is that they are mere securities for the debt. No title passes to the mortgagee, and no right is acquired by the mortgagee, except as an incident to the debt. When the debt to secure which the mortgage was given is barred by statute, the incident goes with the principal, and the mortgage ceases to be enforceable.'

In the case of McCracken Co. v. Mercantile

Trust Co., 84 Ky., 344, [1 S. W., 585], it is said: "There is no statute of limitation as to liens. If the claim becomes barred, the lien dies with it. Tate v. Hawkins, 81 Ky., 577, [50 Am. Rep., 181]. If the claim could be made an incident of the lien, then 'the statute of repose' would be defeated, as the claim no longer legally existed, the lien had nothing to support its existence."

This doctrine was recognized and followed in the case of Bank v. Thomas (decided Feb. 3, 1887), 8 Ky. L. R., 690, [3 S. W., 12], where a mortgage was executed to secure a bill of exchange. It was held that the mortgage lien existed with the debt, and when the debt is barred the mortgage lien is barred.

It seems to be well settled in this State that a lien exists coincident with the debt it is intended to secure. As long as an action may be maintained on the debt the lien is in force, and when the debt is barred the lien is barred. This is held to apply to all character of liens, notes, accounts, bills of exchange, and statutory liens.

We are of opinion that the demurrers to the several answers to the cross petition of Clift should have been sustained. However, the purchaser, Williams, having shown his purchase under a deed of general warranty, is entitled to have the remainder of the land, about 136 acres, sold before the land he has purchased, and, if this 136 acres brings the mortgage debt, his land would not be sold.

In this same action the appellant Glover & Durrett filed an answer and cross petition alleging that the decedent, J. W. Williams, had executed to them a note as follows: "$300.00. Elizaville, Ky., Feb. 26, 1896. One day after date I promise to pay to the order of Glover & Durrett, three hundred dollars, negotiable and payable at the Citizens' National Bank in Louisville, Ky., for

money which they have advanced me on my present crop
of tobacco, which I hereby mortgage to them, and bind
myself to ship all of said tobacco to them at the Louis-
ville tobacco warehouse, Louisville, Ky.  I agree to pay
interest on this note at the rate of eight per cent. per
annum from date until paid, and bind myself, in the event
that I do not ship them said tobacco, also to pay them full
warehouse fees, both selling and buying, same as they
would have received had they sold it.  My crop consists
of about 10,000 pounds.  John W. Williams."

It is not alleged that this note and mortgage, so called,
was ever acknowledged or proven, or ever lodged for
record.  Appellants Glover & Durrett, however, allege
that, by reason of this note and mortgage, they have a
lien on this tobacco, which was on hand when Williams
died, and passed into the hands of his administrator, and
sought its enforcement.  The court sustained a demurrer
to this paragraph of appellants', Glover and Durrett's, cross
petition, asserting a lien, and they amended, pleading that
all the debts of the decedent, John W. Williams, except
funeral expenses and medical bills in his last illness,
were created by Williams prior to the execution of their
mortgage, and that there was sufficient unincumbered
property to pay these subsequent debts; that by reason of
these facts, and that the mortgage was given for a debt
created simultaneous with its execution, no creditor
is prejudiced in the collection of his debts, and no
creditor gave credit to Williams upon the faith of this
property.

To the answer and cross petition, as amended
a demurrer was sustained, and the cross petition dismiss-
ed; from which judgment this appeal is prosecuted by
Glover & Durrett.  There is no question but that the

writing given by Williams to appellants Glover &
Durrett, as between them, is a mortgage, though
never acknowledged or lodged for record. On demurrer
the allegation of the amended answer and cross peti-
tion is taken as true, that all the creditors of the
decedent, except as indicated, were antecedent creditors
to appellants' mortgage.

In the case of Baldwin v. Crow, 86 Ky.,
680, [7 S. W., 147], the court said: "If the inquiry
whether, by that section, creditors generally were intend-
ed to be affected by notice of such conveyances and trans--
fer of property to debtors, in the same way and to the
same extent as purchasers, was an original one, there
would, looking alone to the language used, be some diffi-
culty in reaching a satisfactory conclusion. But there is
no reason whatever that a creditor, whose debt has been
created prior to the conveyance, as was that of appellee,
Crow, and who has not been defrauded or injured there-
by, should occupy a better attitude than a purchaser
with notice." Then, after a careful review of the adjudg-
ed cases, the court continues: "The clear and necessary
implication from the language of section 10, [c, 24, Gen.
Stat.], is that deeds of trust and mortgages of real and
personal estate, though unrecorded, are not void, but
valid, against purchasers at sale under execution, as well
as private sale, when notice has been given. And, that
being the case, it would seem to be the intention that
creditors should be likewise, though indirectly, affected
by notice; for their attempt to collect debts by execution
would be generally abortive, if notice to those about to
purchase could prevent a sale. But, be that as it may,
by the uniform ruling of this court for many years, cred-

itors and purchasers have in that respect been placed on the same footing."

Again this question came before this court, and was decided September 24, 1895, (Three Forks Lumber Co. v. Smith, 17 Ky. L. R., 566, [32 S. W., 167]), and the doctrine of 86 Ky., 680, *supra*, followed. In November, 1897, this question was again before us (Wicks Bros. v. McConnell, 20 Ky. L. R., 84, [43 S. W., 205]), and, after a careful review of the adjudged cases, the court said: "Time and again it has been held by this and other courts, on grounds of public policy, that secret liens were not to be favored. . . . This doctrine we believe to be a salutary one. On the one hand, the un-recorded lien is upheld as against creditors who can not be presumed to have given credit upon the faith of the property held in lien; on the other hand, creditors who may be presumed on such faith to have given credit are protected, as against the secret lien, in the rights which they secure by their diligence in the levy of their execution or attachment. As indicated by Judge Lewis in the Baldwin case, before referred to, if the inquiry were an original one, we might reach a different conclusion as to the meaning of the statute in regard to credi-tors generally, but as to antecedent creditors the question has undoubtedly been considered as well settled."

Following these cases, *supra*, we are of opinion that the demurrer to the answer and cross petition as amended, should have been overruled. Wherefore for the reasons indicated, the judgments on the appeal of Glover & Dur-rett as to the mortgage lien on the tobacco and on the appeal of Clift are both reversed, and cause remanded for further proceedings consistent herewith.

JUDGE WHITE DELIVERED THE FOLLOWING RESPONSE TO PETITION
FOR RE-HEARING:

It is insisted on petition for rehearing that the opin-
ion herein is in conflict with the opinion of this court in
Tate v. Hawkins, 81 Ky., 577, and Kendall v. Clarke, 90
Ky., 178, [13 S. W., 583]. We do not so deem it.

In the Tate v. Hawkins case, the facts show that Hawkins
sold by deed to land in 1864, and the vendor's lien then had
some 14 years to run. The action was brought in 1881, more
than 15 years afterwards. The payments made on the
note by Hawkins in 1873 and 1878 could only operate to
elongate the statute of limitations as to the note, and
bind Hawkins. When these payments were made by
Hawkins, he had long since ceased to have power to bind
the land for any thing. The land was sold by Hawkins to
Basket in 1864, and was subject to the vendor's lien as it
then existed, i. e. for 14 years, or the length of time to
complete the bar, and no subsequent act of Hawkins
after he parted with title could change this time as to
the land, however long he might protract the time as to
the debt itself.

As long as Hawkins owned the land, he might
have extended the lien by extending the note, but
when he ceased to own the land his power to further bind it
ceased. The purchaser took it with all its then burdens,
but they could not be increased. Applying that rule
to this case, it is manifest the opinion rendered herein is
the law. The decedent, Williams, had by payments elong-
ated the statute as to his debt and as to his land. When
a part was sold to the son, W. Y. Williams, in 1888, the
note and lien were by payments, on foot, and the time nec-
essary to elapse to bar by limitation extended far beyond
the filing of the petition by Clift. There is nothing in

the record showing the date of the deed by J. W. Williams
for the 5 acres, afterwards acquired by W. Y. Williams,
and we are unable to say whether it would come within
the same rule as the 87 acres or not, as to limitation.
However, that could be subjected, if at all, only after the
residue had failed to satisfy appellant's (Clift's) mort-
gage.

Payments made by decedent, Williams, after the
sale to his son, could not affect the parts sold to the son,
but that has no application here.

It is also insisted that, as to the widow, Lucy B. Wil-
liams, and her right of dower, the mortgage of Clift is
barred by limitation, and that no payments by her hus-
band can operate to extend the mortgage as to her right
of dower.

In this contention counsel must conclude that
the wife, Lucy B. Williams, in signing the mortgage re-
leasing and waiving her right of dower and homestead,
became the surety of her husband. This has never been
held to be the effect of such release and waiver. The
wife could not become the surety of her husband, and,
if she could, the bar as to a surety is seven years. While
the right of dower existed at common law, in this State
it is governed by statute. The right to a homestead is the
creature of the statute. The statute providing for dower, sec-
tions 2132 and 2135, provides the widow shall have dower
in lands owned by her husband, "unless the right to such
dower or interest shall have been barred, forfeited or re-
linquished;" and (section 2135) that "the wife shall not
be endowed of land sold, but not conveyed by her hus-
band before marriage, nor of land sold in good faith, after
marriage, to satisfy a lien or incumbrance created before

marriage, or *created by deed in which she joined*, or to satisfy a lien for the purchase money" (italics ours).

It is clear that the wife, having signed and acknowledged the mortgage and released and waived her dower and homestead right can not claim dower in such lands by reason of the statute above, as well as by reason of the fact that the mortgage itself is not barred by limitation. The widow's claim can only come through her husband, and her right dates from his death, and in no case, where she signs the mortgage, can she be in a better position than a purchaser with constructive notice.

In the case of Cook v. Union Trust Co. (decided June 10, 1899) [51 S. W., 600], we held that a purchaser took the land with its burden at that date, and any payment on the debt made before the date of the purchase would operate to extend the statute of limitation as to the purchaser the same as to the original mortgagor.

Petition overruled.