## No. 9153.

### INTERSTATE TRUST COMPANY *v.* MONTEZUMA VALLEY IRRIGATION DISTRICT.

1. STATUTES—*Adopted from Another State.* We adopt with the statute the construction theretofore given to it by the courts of the state of its origin.

2. IRRIGATION DISTRICT—*Taxes—Cumulative Levy.* The tax levied for an irrigation district is in the nature of a local or special assessment. When all assessments required by law have been levied, the district is not empowered to add to the yearly expense by a cumulative levy, to cover warrants issued for the expenses of preceding years. The holders of warrants issued in preceding years, and which remain unpaid, by reason of the defaults of the taxpayers, may take the land itself, at the tax sale, in lieu of the warrant.

*Error to Montezuma District Court, Hon. W. N. Searcy, Judge.*

Messrs. MELVILLE & MELVILLE, for plaintiff in error.

Mr. W. F. MOWRY, for defendants in error.

Mr. Justice Bailey delivered the opinion of the court.

IN these proceedings, plaintiff below, The Interstate Trust Company, sought by writ of mandamus to compel the board of directors of The Montezuma Valley Irrigation District to certify an additional tax, by cumulative levy, to the County Commissioners of that county, for the purpose of paying off some $25,000.00 in warrants of that district, and held by it, amounting with interest to approximately $38,000.00. There was a demurrer to the writ on the

ground that it did not state sufficient facts to constitute a cause of action. The demurrer was sustained, and plaintiff electing to stand by its case as made, a judgment of dismissal was entered. The trust company brings the cause here for review.

It is admitted that sufficient levies have been made to pay the warrants in question in full, and that such levies are also sufficient to cover in addition a margin of fifteen per cent for deficiencies. It appears, however, that many taxpayers are delinquent, and that for this reason the warrants have not been discharged. Therefore, plaintiff claims that it is the clear legal duty of the defendant officers to levy and collect an additional tax to pay and discharge these warrants.

It is urged that the words, "such additional amounts as may be necessary to meet any deficiency in the payment of said expenses theretofore incurred," found in the statute, confer the power upon, and make it the duty of, the district officials to levy a cumulative tax for this purpose. The outcome of this suit, therefore, depends wholly upon the construction to be given the irrigation district act.

It is clear that the claim of plaintiff can be upheld only upon the theory that the clause above quoted gives the board of directors of the district general taxing powers, and that the taxes levied under the act are in the nature of general taxes, and are not local or special in character. The question is whether irrigation districts are organized for the purpose of making local improvements, with the power to levy local improvement taxes only, or whether they are so closely akin to municipal corporations in their nature and objects as to give them general taxing powers.

The statute in question was taken in substance from the Wright Act, of California, and under the familiar rule we adopted the construction theretofore given to it by the courts of the state from which it is borrowed. *McCord v. McIntyre*, 25 Colo. App. 376, 138 Pac. 59. In *San Diego v. Linda Vista Irr. Dist.*, 108 Cal. 189, 41 Pac. 291, 35 L.

R. A. 33, the court, in determining whether irrigation assessments levied under the Wright Act were a tax within the meaning of a provision of the State Constitution providing that all property in the state, not exempt from taxation by Federal provisions, should be taxed in proportion to its value, said, at page 193:

"But the assessment, to satisfy which the lands in question were sold, is not a tax within the meaning of said provisions of the Constitution. The act under which the Linda Vista District was organized authorizes the formation of districts where the lands of the different owners are "susceptible of one mode of irrigation from a common source, and by the same system of works." The district, when formed, is a local organization to secure a local benefit from the irrigation of lands from the same source of water supply, and by the same system of works. It is, therefore, a charge upon the lands benefited by a single local work or improvement, and from which the state, or the public at large, derives no direct benefit, but only that reflex benefit which all local improvements confer."

In *Irrigation District v. Williams*, 76 Cal. 360, 18 Pac. 379, in discussing the nature of irrigation districts, and the relation of irrigation assessments to general taxation, at page 370, it was said:

"And in no sense can it be said that under the act in question the assessments to pay the bonds is to be levied or collected in order that one man may take another's property for his own exclusive use. * * * Nor does it follow that the method of assessments and their collection adopted must be assimilated to and follow exactly the mode provided in the constitution for the assessment and collection of taxes for general state purposes. The nature of the assessments is one for local improvements, which, however, eventuate in the advancement of the public good, and such assessments and collections can be lawfully made."

Cases in other jurisdictions holding that irrigation district taxes are in reality local improvement or special as-

sessment taxes are: *Board of Directors v. Peterson,* 4 Wash. 147, 29 Pac. 996; *Lundberg v. Green River Irr. Dist.,* 40 Utah 83, 119 Pac. 1039; *Oregon Short Line R. R. v. Pioneer Irr. Dist.,* 16 Idaho 578, 102 Pac. 904; *Pioneer Irr. Dist. v. Bradley,* 8 Idaho 310, 68 Pac. 295, 101 Am. St. Rep. 201; *Nampa Dist. v. Brose,* 11 Idaho 474, 83 Pac. 499; *Alfalfa Dist. v. Collins,* 46 Neb. 411, 64 N. W. 1086; *In re Gallatin Dist.,* 48 Mont. 605, 140 Pac. 92; and *Little Walla Dist. v. Preston,* 46 Or. 5, 78 Pac. 982.

In *Fallbrook Irr. Dist. v. Bradley,* 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369, the Supreme Court upheld the constitutionality of the Wright Act upon the ground that since the power given under the act was to assess special improvement taxes only, that therefore it was constitutional.

This court, in *Anderson v. Grand Valley Irr. Dist.,* 35 Colo. 525, 85 Pac. 313, in passing upon the validity of the district irrigation act of this state, in effect approved the construction given the Wright Act in the *Fallbrook* case, and in the California cases, in the following language, at page 533:

"The so-called Wright Act, which, in all substantial particulars, is the same as the one now under consideration, has repeatedly been construed and upheld by the Supreme Court of California and the Supreme Court of the United States in the following, among other cases that might be cited: *Irrigation Dist. v. Williams,* 76 Cal. 360 [18 Pac. 379]; *Irrigation District v. De Lappe,* 79 Cal. 351 [21 Pac. 825]; *Board of Directors v. Tregea,* 88 Cal. 334 [26 Pac. 237]; *In re Madera Irr. Dist.,* 92 Cal. 296 [28 Pac. 272, 675, 14 L. R. A. 755, 27 Am. St. Rep. 106] *In re Central Irr. Dist.,* 117 Cal. 382 [49 Pac. 354]; *Merchants' Bank v. Irr. Dist.,* 144 Cal. 329 [77 Pac. 937]; *Fallbrook Irr. Dist. v. Bradley,* 164 U. S. 112 [17 Sup. Ct. 56, 41 L. Ed. 369]; *Tregea v. Modesta Irr. Dist.,* 164 U. S. 179 [17 Sup. Ct. 52, 41 L. Ed. 395]; *Tulare Irr. Dist. v. Shepard,* 185 U. S. 1 [22 Sup. Ct. 531, 46 L. Ed. 773]."

It is urged, however, that those cases determined simply

the constitutionality of the statute, and not the character of the assessments. While it is true that the question was primarily one as to the constitutionality of the act, the courts in determining that question were obliged also to determine the character of the tax imposed. The *Fallbrook* case, *supra,* specifically upheld the constitutionality of the act upon the ground that such tax is akin to local improvement assessments, and not a general tax. Indeed, it appears that the courts of all jurisdictions which have passed upon irrigation district laws have either expressly or by necessary implication held the assessments levied thereunder to be local improvement taxes.

Plaintiff contends, however, that irrigation district assessments, being levied annually throughout the life of the district, are for that reason inconsistent with the theory that the taxes are for local improvements. From a legal viewpoint this circumstance does not affect the character of the assessments. The difference between the assessments for the paving of streets and one for irrigation of land is physical and not legal. In the first instance the result is accomplished, and the benefit conferred when the paving is completed; in the second, in order to render the benefit a continuing one, the assessments in the very nature of things must also be continuous. But this fact can not be held to change that which is in fact a local improvement assessment into a general tax.

In Dillon on Municipal Corporations, section 1447, it is said:

"Not only the general power to tax, but the power to make local improvements at the expense of the property benefited is like all other legislative power * * * a continuing one unless the contrary appears, and hence it is not exhausted by being once exercised."

Irrigation district assessments are distinguished from taxes levied by a municipality for water works, and taxes levied for maintenance of schools, because of the public nature of the latter. In the latter cases there is a direct

public benefit, general in character, for which the public at large, through general taxes levied for that purpose, must pay. But in the construction and maintenance of an irrigation system, there is obviously no direct general benefit. The direct advantage is to the particular landowner whose land is supplied with water, and he pays in proportion to the benefits received, the land itself being held for such payment.

The meaning of the phrase, "such additional amounts as may be necessary to meet deficiency in the payment of said expenses, theretofore incurred," refers to prior general expenses. The act provides, the law at that time permitting such liabilities to be incurred, for the payment of unforseen or emergency expenses, for which no estimate had been made, levy certified or warrants issued. No other or different construction as to the purpose and meaning of this clause, if the constitutionality of the statute is to be upheld, is possible.

The views herein expressed in no manner give support to the claim of repudiation. The liabilities of the district are a charge upon the land ratably, with the acre as the unit, on which basis assessments are determined according to benefits. Back of each dollar of debt stands, ratably, the irrigable land of the district, the extent of which has been carefully and exactly ascertained. The law provides the method whereby warrant holders may take the land itself, at tax sale, in lieu of warrants if they so desire. This is the letter of their contract and this is the remedy they must have understood was provided for them, in the event of failure of payment of the warrants, when they assumed the relationship of creditor to the district. This manifestly is not repudiation, since the debtor stands ready to fulfill to the utmost the provisions of the contract according to its precise terms.

Upon principle and authority, therefore, we conclude that the taxing power given irrigation districts is the power to levy local or special improvement assessments only. Under

this construction the phrase, "deficiency in the payment of said expenses theretofore incurred," does not empower, and does not purport to empower, the district to add to the yearly expenses, by cumulative levies, an amount sufficient to cover unpaid warrants for the expenses of preceding years. To strain the intent of the statute to this construction would be in effect to compel a portion only of the landowners, perhaps but one of them, to bear the whole burden of the district. This is not only inconsistent with and contrary to the theory of special assessments, which is that assessments shall be in proportion to the benefits conferred, but amounts to confiscation in the guise of taxes for local improvements.

Neither the clause relied upon by plaintiff, nor the act taken as a whole, viewed from any angle, contemplates that the property of one landowner shall become liable for the assessments upon other lands where the owners fail or refuse to pay. The assessment is not based upon the value of the land in the district as a whole, but is apportioned ratably upon irrigable land only, according to benefits, in conformity with the law of special assessments, under which the district, through a majority, may include land against the will of its owner. To hold that one owner is liable for the assessments due for benefits conferred upon the land of his neighbor would be violative of both state and federal constitutions, and for this reason alone the argument against the contention of plaintiff should be conclusive. A construction of this act which charges the property of a faithful few with the payment of the entire cost of the project is manifestly contrary to the purpose and spirit of the act and can not be legally upheld on any theory. Such a rule would be fundamentally wrong, and subversive of every legal principle governing assessments for local improvements.

It is admitted that all assessments required by law to be made have been levied. If the assessments have not been collected the fault does not lie with the system of levying

the tax, but in the collection thereof. Under these circumstances plaintiff has the same remedy now which it originally had, and which it is conclusively presumed to have known was its only remedy, when it became the owner of the warrants herein involved. To overthrow the system of levying assessments according to benefits, and substitute cumulative levies, upon the authority of a clause in an act which has been held by the courts of many jurisdictions, and by the Supreme Court of the United States, to bestow no such power, would be not only contrary to natural justice, but in direct conflict with the clear purpose and intent of the act itself.

In reaching this conclusion we are not unmindful of the decision of the U. S. Circuit Court of Appeals, of the Eighth Circuit, reported in 248 Federal, at page 369, 160 C. C. A. 379. That opinion, while persuasive, is not controlling, and was by a divided court, with a strong, logical and convincing dissenting opinion. In any event, it is the province of the courts of this state to interpret its own statutes, and we are convinced, for the reasons hereinbefore stated, that the act under consideration confers no such power as is indicated in the prevailing opinion to which reference is above made.

It is manifest that to command the defendants to make the proposed levy would be to enjoin upon them the doing of a thing which they are not only not required by law to do, but which they in fact have no legal right to do. The judgment of the trial court is sound and should be affirmed.

Judgment affirmed.

Decision *en banc.*

All concur.