## No. 10,851.

MICHIGAN TRUST CO. *v.* OTERO IRRIGATION DISTRICT, ET AL.

Decided January 5, 1925.  Rehearing denied February 2, 1925.

Proceeding to dissolve an irrigation district.  Judgment disallowing claim of plaintiff in error.

### *Reversed.*

1.  IRRIGATION DISTRICTS—*Dissolution—Indebtedness.*  Under the 1915 act, the dissolution of an irrigation district that has an outstanding debt, may not be decreed unless and until all its indebtedness is paid, or liquidated and adequate security accepted by the creditors.

2.  *Dissolution—Indebtedness—Tax Levy.*  Failure of revenue officers to collect a tax levy for the payment of bonds and interest coupons issued by an irrigation district, does not operate as a discharge of the indebtedness represented by those unpaid instruments so as to permit a dissolution of the district.

3.  *Indebtedness.*  If an irrigation district has money or property aside from the specific fund to be raised by a tax levy, it can be subjected to the payment of its outstanding negotiable bonds and coupons which have not been paid because of inability to collect the special tax.

4.  CONSTITUTIONAL LAW—*Irrigation Districts—Indebtedness.*  Section 2035, C. L. '21, if construed to authorize the dissolution of an

irrigation district without payment of its just debts, would be unconstitutional as impairing the obligation of contracts and as depriving citizens of their property without due process of law.

*Error to the District Court of Otero County, Hon. Samuel D. Trimble, Judge.*

Messrs. ROGERS, JOHNSON & FULLER, for plaintiff in error.

Mr. FRED A. SABIN, Messrs. PERSHING, NYE, FRY & TALLMADGE, for defendants in error.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

OUR General Assembly has provided for the organization of irrigation districts in a statute substantially the same as the so-called Wright Act of the state of California. In 1905, (S. L. 1905, p. 270; C. L. 1921, p. 679, § 2033, et seq.) it passed an act for the dissolution of districts so organized, when they are free from debt, and in 1915, (S. L. 1915, p. 307; C. L. 1921, p. 680, § 2035 et seq.) another act for dissolving irrigation districts generally, both those which are, and those which are not, indebted. The decree dissolving the Otero Irrigation District, now before us, was rendered by the district court of Otero county in a special proceeding instituted under the 1915 Act. It was initiated by the qualified electors of the district whose petition to the board of directors, though it might have contained, did not include, a plan or scheme to carry into execution the desired dissolution. By this petition the board was requested to, and it did, call an election of the qualified electors, and included in the call for the election was a proposed plan or scheme adopted by the board as the act authorized when a plan was not proposed in the initiating petition. The proposition thus submitted at the election was adopted and thereupon the board, as required by the statute, filed its petition in the district court as a proceeding in rem for the dissolution of the district. The

prescribed notice was published, and upon the final hearing the court proceeded to, and did, determine the amount of the indebtedness of the district, the validity thereof, and purported to adjust and determine the rights and liabilities of all parties, and adopted the plan proposed and provided for its execution in accordance with section 4 of the Act, and rendered a decree accordingly. To the clause of the general decree disallowing its claim, the Michigan Trust Company, a respondent, owner and holder of unpaid outstanding negotiable bonds and coupons thereof which the district had theretofore issued and on which the trust company had previously obtained a judgment in the United States District Court of Colorado, has sued out this writ of error.

Section 3 of the 1915 Act provides that no such election shall be called until the assent of all holders of valid indebtedness against the district, known to the directors, shall be obtained, or provision shall be made in the proposed plan for the ultimate payment, or liquidation, with adequate security, of the claims of nonassenting holders. Section 10 provides that no dissolution may be decreed and no plan of liquidation shall be approved by the court which does not so provide.

That the bonds and coupons when issued constituted a valid indebtedness of the district is not questioned. The 1905 statute, in force when the bonds were issued, did not authorize a dissolution of an irrigation district which was then in debt. The 1915 Act, the one under which this proceeding was instituted, allowed a dissolution of districts which are, as well as those which are not, in debt. But the dissolution of a district that has an outstanding debt may not be decreed unless and until all indebtedness is paid or liquidated and adequate security accepted by the creditors. The claim presented by plaintiff in error was not paid or secured, but the decree, on the contrary, disallowed it for reasons thus stated therein: "That the claim of the Michigan Trust Company, a corporation, is disallowed because it appears from the evidence and stipulations on file

that the judgment obtained by the Michigan Trust Company is based upon interest coupons for the payment of which taxes in the full amount permitted by law had been duly levied by The Otero Irrigation District and its officers."

It was the judgment of the learned judge, and it is the position taken here by counsel for the irrigation district, that our governing statute restricts payment of such bonds and coupons solely and exclusively to the fund to be raised by a special levy of taxes on the irrigable lands of the district and as the record shows, and as is admitted, the taxes so levied were not paid and as the district, as it is said, had thereby performed every obligation resting upon it with respect to the claims of the trust company, it was not any longer indebted to the trust company, and the trust company was not entitled to anything in this proceeding. In other words, the contention is that the claim of the Michigan Trust Company, evidenced by a judgment of a court of competent jurisdiction, like the coupons on which such judgment is based, being payable only out of a levy of taxes that was made and which produced no money, ceases to be an indebtedness of the district, having been, in the eye of the statute, discharged by such default, and the court, in this proceeding, could and should look beyond the judgment to ascertain the nature of the claims on which judgment was rendered to ascertain what, if any, affirmative action it may take in executing the judgment. We cannot agree to such a conclusion.

When a court refuses a judgment to a plaintiff in an action on a promissory note brought after the expiration of the period of limitation fixed by statute, it does so not because the debt is thereby discharged, but because the policy of the law is not to enforce stale claims. The debt still exists as an obligation. The state merely withholds from the creditor utilization of its judicial machinery to collect a stale claim. In this state when a promissory note or a debt of any kind is secured by a trust deed with power of sale to the trustee for a default in payment, though it

may not be merged into a court judgment after the lapse of the time given by a statute of limitation for bringing an action on it, nevertheless the trustee may foreclose by a public sale. This conclusion could not have been reached by this court had the secured note been discharged by the bar of the limiting statute. It was arrived at because the note was a continuing debt till actually paid. Analogous to this principle is the case in hand. Conceding, but not deciding, because the point is not here involved, that under our irrigation district act the negotiable bonds and coupons thereby authorized are made payable only out of revenue collected from levies of taxes, still the failure of the revenue officers to collect the levied tax does not operate as a discharge of the indebtedness represented by these unpaid instruments. It still remains a debt as before. A case quite in point is *Boynton v. District Township of Newton,* 34 Iowa, 510. A judgment had been recovered against the district township. The board of directors of the district issued an order on its treasurer for the amount of the judgment. The court held that the drawing of the order did not operate as a satisfaction of the debt until it was actually paid. In that case under the statute the district board had pursued the plan authorized by statute for the payment of its indebtedness. Failure to realize on the warrant did not discharge the debt. So here. The board of directors of the district complied with the statute and performed its duty by making a sufficient levy of taxes which, if paid by the taxpayers, would have discharged the obligations evidenced by its negotiable bonds and coupons or a judgment rendered thereon. Even though the district board has done all that it may lawfully do to gather a fund to pay, this does not constitute a payment or discharge of the debt. Though the particular method of payment prove abortive, the debt remains an obligation of the district until it is paid. Just as in the Iowa case the drawing of a warrant for the payment of a debt does not operate as a discharge until the debt itself is paid.

From another viewpoint the court was wrong. Counsel

for the district concede, as the law undoubtedly is, that if an irrigation district has money or property aside from the specific fund to be raised by a levy, it can be subjected to the payment of its outstanding negotiable bonds and coupons which have not been paid because of inability to collect the special tax.  Property of an irrigation district which it owns, in its capacity as trustee, like an irrigation system constructed out of moneys raised either by a tax or from the sale of its negotiable bonds, counsel for the district concedes might be subjected to the payment of this judgment.  This district has a complete irrigation system and it holds the same as a trustee in trust for the landowners and qualified electors of the district.  Its estimated value is in excess of $100,000.  When the county treasurer advertised sale of lands in this district for failure of their owners to pay the levy made by the board of directors no bids were made, and the treasurer, as authorized by law, struck off the same at first to the county and afterwards to this irrigation district.  The district still owns the certificates of purchase issued to it by the treasurer and these certificates constitute a valid and enforcible lien upon the lands on which the tax levy was made.  They have unquestioned value.  The plan adopted by the electors and sanctioned by the court contemplated, and the decree expressly provides, that these certificates of purchase owned by the district and its irrigation system shall be transferred to the principal creditors and owners of a majority of the outstanding bonds of the district, or to a corporation to be formed by them or the landowners of the district, as part consideration to such transferees for their promise to pay all the indebtedness of the district.  In addition to this a statute in force when the bonds were issued, provides that the special levy of taxes shall be not only sufficient to provide a sum sufficient to pay the coupons and bonds as they fall due, but 15 per cent in addition to cover delinquencies. A fund thereby raised might hereafter and in more favorable years and in better times for farmers result in a sum sufficient to pay past due indebtedness in whole or in part,

Then, too, funds may be realized hereafter through redemption or sale of tax certificates which the district holds. The statute (C. L. 1921, §§ 1986, 1992) also provides for the issuance and sale of refunding bonds for the purpose of refunding past due indebtedness. It cannot be foreseen that by some or all of these methods the district may not acquire sufficient funds to pay all its debts. And as we have already indicated, the statute contemplates, in the event of a dissolution of the district, that the property and assets of the district may be sold and outstanding indebtedness thereby be paid. Indeed, the statute requires that such indebtedness shall be paid before there can be any distribution of assets among the landowners of the district. The decree also expressly declares that in this very case the persons who propose to purchase are willing to assume and pay all of the valid existing indebtedness of the district as one of the considerations for the transfer to them of the property and assets of the district.

To sum up we say that the failure of the means of payment prescribed by statute does not extinguish the debt for which such provision is made. This conclusion makes it unnecessary to discuss some of the important and far-reaching propositions of law discussed in the briefs in both cases. None of the authorities relied upon by defendants in error sustain the decree. Indeed, it would seem to us to be a monstrous doctrine to establish that an irrigation district may be dissolved, as was decreed in this case, without requiring, as a condition precedent, the payment of, or adequate security for, all of its valid indebtedness. Our General Assembly by the Act of 1915 certainly so intended when it declared that no election should be held unless adequate provision was made or a plan adopted for the payment of the indebtedness or the securing of the same. If a legislative body intended to authorize such an unjust decree it would be unconstitutional as impairing the obligation of contracts and as depriving citizens of their property without due process of law. We are not called upon to construe or enforce a statute of that kind, for it is clear

that the Act of 1915 declares, and intended to declare, that all indebtedness of the district must be paid or secured before the district can be dissolved. It did not mean to say, and it did not enact, that such indebtedness of the district as could not be met by the special tax levy was thereby discharged or that it no longer constituted an indebtedness of the district if the tax was not paid.

This clause of the decree must be reversed and the cause remanded. Unless the indebtedness of the Michigan Trust Company is paid or is secured to its satisfaction, the decree cannot stand or the district be dissolved. If such indebtedness is paid the decree will not be disturbed or modified by us in this case. We shall not direct the trial court to render any specific judgment, but the decree will be reversed, insofar as it affects this plaintiff in error, and the cause remanded with instructions to the district court, either to vacate the decree, or modify or qualify the same, so that the indebtedness of plaintiff in error will be paid in full, or adequate security be given to and accepted by it in satisfaction of its claim.

MR. CHIEF JUSTICE TELLER not participating.